UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MEGAN THOMAS LAW, PLLC,

                                    Plaintiff,

vs.

SYRACUSE REGIONAL AIRPORT AUTHORITY,
JASON MEHL, in his official capacity as Chief
Commercial Officer of Syracuse Regional Airport
Authority, and JASON TERRERI, in his official
capacity as Executive Director of Syracuse Regional
Airport Authority,

                                    Defendants.

**DECLARATION**

**Civil Action No.: 5:25-cv-01114
(AJB/ML)**

JASON MEHL, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury

that the following is true and correct:

1.      I am employed by Syracuse Regional Airport Authority ("SRAA" or "Authority")

and am one of the named Defendants in this lawsuit.  My current position with SRAA is Chief

Commercial Officer, a role I assumed on May 10, 2021.  Prior to that, I spent over 17 years in

the retail industry with Metro Mattress Corp., where I held progressive leadership roles including

Controller, Chief Financial Officer, and ultimately President & CEO.  I am familiar with the

facts of this matter and submit this Declaration in opposition to Plaintiff's Order to Show Cause

(Dkt. 8).

2.      SRAA is a public benefit corporation established pursuant to the N.Y. Public

Authorities Law in 2011 to operate the Syracuse Hancock International Airport in Syracuse, New

York ("Airport"). The purpose of the Authority is to facilitate the efficient, safe, and orderly

movement of passengers and cargo via air travel, and to generate revenue to sustain such

operations. As an airport, SRAA has distinctive needs, including the need to maintain a physical

space that is calm, orderly and free from unnecessary discord or disruption. Air travel can be stressful enough for many and our goal is to do our best to provide a pleasant experience for all who pass through the Airport's terminal (the "Terminal").

3.      The Authority has offered an advertising program to sell advertising space within the Terminal to generate revenue and enhance travel and business in the region subsequent to the City of Syracuse transferring operations of the Airport to the Authority in 2014. The Authority's policies expressly state that the advertising space at the Airport is *not* intended to be a public forum open to all expressive activity, but rather a means for the Authority to generate revenue in its proprietary capacity as the operator of the Airport. The advertising program is designed to avoid disruption and controversy, and to preserve the Airport's reputation and goodwill among passengers, visitors and tenants.

4.      Attached hereto as **Exhibit A** are images of advertising approved by SRAA and posted in the terminal from August 1, 2024 to present.[1]

5.      Attached hereto as **Exhibit B** is a true and accurate copy of the Authority's Advertising Policy, adopted by the Authority on or about December 1, 2023 (the "2023 Policy"). The 2023 Policy was amended by the Authority Board effective September 12, 2025 (the "2025 Policy") to provide the Authority's advertising partners with greater clarity, and the Authority's decisionmakers with additional guidance, as to the nature of permissible advertising content. See **Exhibit C** attached hereto.

6.      In the past, the Authority engaged with an outside vendor to sell and manage the ad space in the Terminal. When we brought that function in-house in or around 2019, we

---

[1] Note that Exhibit A also contains nine video ads which will be provided to the Court via a USB drive.

increased our ad revenue considerably. The 2023 Policy limited the program to "commercial advertising" and explicitly prohibited content that is political, religious, violative of copyright or trademark rights, or unlawful. Exhibit B at 3. The 2023 Policy also prohibited content that is "inappropriate, immoral, offensive or objectionable," a standard which SRAA has consistently enforced as a prohibition on subject matter or content that may disrupt Airport operations and climate. Contrary to the allegations in Plaintiff's submissions (Dkt 8-14 at p.13), the 2023 Policy was publicly available at the Policies and Procedures page on the Airport's website, as is the current policy.

7.      Both the 2023 Policy and advertising contract (Dkt. 1-3) expressly provide that SRAA will review and must approve all advertising. Most advertisements do not create an issue. For example, SRAA has historically allowed commercial advertising describing services offered, including for medical procedures and legal services, which do not otherwise contain content that frustrates the purposes of the advertising program.

8.      While the Authority has accepted the overwhelming majority of proposed ads as consistent with its policies, it has exercised its right to reject those that are not. In 2023, for example, the Authority rejected an advertisement for a nightclub because of the advertisement's use of sexually suggestive artwork and language portraying adulterous behavior (*i.e.*, a double entendre that alluded to sexual infidelity). See **Exhibit D** attached hereto and note that neither version of this ad was approved.

9.      I have reviewed the two advertisements referenced in the Firm's motion for a preliminary injunction, filed with the court as Dkt. 8-9 and Dkt 8-10. These advertisements were reviewed and approved by the Authority because they merely state the legal and medical services

3

offered by the advertiser. They are in no way disparaging and do not otherwise contain content that frustrates the purpose of the Authority's advertising program.

10. The Authority's interest in prohibiting disparaging or threatening content is to maintain its long-term ability to attract other advertisers who do not want to display their ad alongside a disparaging or threatening message, to preserve the advertising space's purpose, and to avoid controversy that would diminish the Airport's reputation and goodwill among passengers and tenants. By restricting disparaging content and allowing only innocuous commercial ads, the Authority is able provide a pleasant travel experience for everyone passing through the Terminal.

11. While each ad is individual onto itself and its advertiser, they are still exclusively housed within the Terminal, a structure which is synonymous with the Airport and the Syracuse region. This is different than free-standing ads which appear along highway billboards. The presence of disparaging or threatening content in ads along the Terminal walls could result in passengers and airport tenants associating such content with the Airport or getting the impression that SRAA endorses such content, either of which could negatively impact their view of the Airport and dissuade them from patronizing or doing business with SRAA in the future. Further, such ads could unnecessarily invite discourse and debate in the Terminal that would create a disruptive atmosphere.

12. I first became aware of the Firm's proposed ad on the morning of July 23, 2025 when a proof was shared with me by Terminal Advertising and Concession Manager Linda Ryan. My initial reaction to the ad was that it was clever and provocative, but not consistent with our policy or intent to keep the Terminal free from disparaging content. Specifically problematic was its tag line — "When HR called it harmless flirting . . . We call it EXHIBIT A."

4

and the potential for disruption presented by this type of accusatory and inaccurate statement. I had discussions with Ms. Ryan, our internal Employee Relations and Compliance Specialist Katie Tiisler and Executive Director Jason Terreri and our shared consensus was that the ad as presented was not consistent with our policies, but that it could easily become so with a few minor changes.

13.    We first attempted to communicate this to the Firm via an email sent by Ms. Ryan to Attorney Thomas on the morning of July 23, 2025. Dkt. 8-4. I also personally reached out to Attorney Thomas via phone on July 24 and e-mail on July 26 to further explain our position and offer suggested alternative taglines. Dkt, 1-7. The majority of the Firm's ad was acceptable and we advised the Firm as such. Specifically, we had no concerns with listing the legal services that the Firm provides, including for sexual harassment and no objection to the proposed ad's other content, including the tag line "No Fear, No Shame, Just Justice," or any of the Firm's web-based content to which the proposed ad linked through display of a QR code.

14.    I specifically suggested several alternative tag lines intended to convey the same important message about the Firm's ability to provide services to potential victims of sexual harassment, but without running afoul of the Authority's policies, including: "When your concerns were brushed aside, we took them seriously", "You deserve to be heard. We make sure you are", and "You spoke up. We listened – and we took action." See Dkt. 1-7. These alternatives were unacceptable to Plaintiff, and this litigation followed.

15.    On September 16, 2025, I transmitted a letter to Attorney Thomas informing her that the Firm's proposed ad was rejected as violative of the 2025 Policy, specifically, the Prohibited Advertising Content "Disparagement" and/or "False, Misleading, or Deceptive" provisions thereof. A copy of such letter determination is attached hereto as **Exhibit E**.

16.    The Authority is committed to enforcing its policies and prohibiting any advertisements that are disparaging towards particular persons or groups. If the SRAA is compelled to accept and display the Firm's ad "as is," we will be precluded from enforcing these policies in the future and will be severely limited in which advertisements we reject. If so, not only do we run the risk of dissuading certain future advertisers from seeking space at the Airport, but also creating a disruptive and undesired atmosphere in the Terminal.

**By signing below, I declare under penalty of perjury that the foregoing is true and correct. Executed on September 17, 2025.**

JASON MEHL

6