**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEGAN THOMAS LAW, PLLC,<br><br>                                  Plaintiff,<br><br>         v.<br><br>SYRACUSE REGIONAL AIRPORT AUTHORITY,<br>JASON MEHL, in his official capacity as Chief Commercial<br>Officer of the Syracuse Regional Airport Authority, and<br>JASON TERRARI, in his official capacity as Executive<br>Director of the Syracuse Regional Airport Authority,<br><br>                                  Defendants. | Civil Action No.:<br>5:25-cv-1114 (AJB/ML) |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
### ITS MOTION TO DISMISS

**HANCOCK ESTABROOK, LLP**
John T. McCann, Esq. (Bar Roll #102148)
Lindsey H. Hazelton, Esq. (Bar Roll #509365)
1800 AXA Tower I, 100 Madison Street
Syracuse, New York 13202
Telephone: 315-565-4500
lhazelton@hancocklaw.com


Steven L. Osit
Subash S. Iyer
KAPLAN KIRSCH LLP
1500 Broadway, Suite 1605
New York, NY 10036

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND..................................................................................................3

STANDARD OF REVIEW....................................................................................................5

ARGUMENT...........................................................................................................................6

    I.     Plaintiff Fails to State a Claim for First Amendment Retaliation....................................6

    II.    Plaintiff Fails to State a Claim for Gender Discrimination in Violation of the First and Fourteenth Amendments or a Claim for an Equal Protection Violation Under the Fourteenth Amendment. .................................................................................................8

    III.    Plaintiff Fails to State a Claim for Violation of Substantive Due Process Under the Fifth and Fourteenth Amendments. ...............................................................................10

    IV.    Plaintiff Fails to State a Breach of Contract Claim.........................................................11

    V.    Plaintiff Fails to State a Claim for Money Damages Under Section 1983 or for Punitive Damages. ......................................................................................................13

        A.    Plaintiff Fails to State a Claim for Damages Against the Defendants Under *Monell*..............................................................................................................13

        B.    Plaintiff Fails to State a Claim for Punitive Damages Against the Individual Defendants in Their Official Capacity. ...............................................................14

    VI.    The Court Lacks Jurisdiction to Grant Plaintiff Injunctive Relief With Respect to the 2023 Advertising Policy Because That Request Is Moot. .......................................15

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 23-930,
   2024 U.S. App. LEXIS 8832 (2d Cir. Apr. 12, 2024)......................................................... 10, 11

*Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020) ........................................................14

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
   109 F. Supp. 3d 626 (S.D.N.Y. 2015)..................................................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 5, 6, 14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)...................................5

*Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 11 Civ. 0505,
   2011 U.S. Dist. LEXIS 69168 (S.D.N.Y. June 27, 2011) .................................................3, 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).........................................................................5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).......................................................3

*Collins v. Putt*, 979 F.3d 128 (2d Cir. 2020) ................................................................................10

*Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130 (2d Cir. 1999) ..................................13

*Demoret v. Zegarelli*, 451 F.3d 140 (2d Cir. 2006) .......................................................................9

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ...............16

*Goureau v Lemonis*, 1:20-cv-04691, 2021 U.S. Dist. LEXIS 199321
   (S.D.N.Y Oct. 15, 2021)........................................................................................................12

*Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999) .............................................................9

*Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468 (2022)................................................................7

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) ...................................................................10

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995) ..........................3

*Ivani Contracting Corp. v. City of New York*, 103 F.3d 257 (2d Cir. 1997)................................15

*Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131 (2d Cir. 2011)................................................11

*Kentucky v. Graham*, 473 U.S. 159 (1985) .............................................................................. 13, 14

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)....................................................................................5

*Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215 (2d Cir. 2018) ........................16

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002)................................................................................6

*Matthews v. City of New York*, 779 F.3d 167 (2d Cir. 2015) ...............................................6, 7, 8

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759 (2d Cir. 1991)................4

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ...................................................................13

*N.Y. State Rifle & Pistol Ass'n, Inc. v. James*, 1:22-CV-907,
    2025 U.S. Dist. LEXIS 28731 (N.D.N.Y. Feb. 18, 2025).......................................................6

*Roberts v. Fleury*, 6:22-CV-0918,
    2024 U.S. Dist. LEXIS 50956 (N.D.N.Y. Mar. 22, 2024) ....................................................15

*Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) ...................................................5, 6, 14

*Salvana v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    621 F. Supp. 3d 287 (N.D.N.Y. 2022) ...................................................................................8

*Valencia Ag, LLC v. Reid*, 5:24-CV-0116,
    2025 U.S. Dist. LEXIS 54706 (N.D.N.Y. Mar. 25, 2025) .....................................................6

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005).................................................................................11

*Winchester 84, LLC v. Morrow Equip. Co.*, No. 23-cv-5871,
    2024 U.S. Dist. LEXIS 108555 (S.D.N.Y. June 18, 2024) ............................................. 12, 13

**Statutes**

42 U.S.C. § 1983.............................................................................................................................2

N.Y. Pub. Auth. Law § 2799-ddd(1)..............................................................................................13

## PRELIMINARY STATEMENT

Defendant Syracuse Regional Airport Authority ("SRAA"), along with Individual Defendants Jason Mehl and Jason Terreri, in their official capacities (collectively, the "Authority"), submit this Memorandum of Law in support of their Motion to Dismiss the Complaint filed by Plaintiff Megan Thomas Law, PLLC (the "Firm").

SRAA operates the Syracuse Hancock International Airport (the "Airport") to provide safe, secure, and efficient aviation services to the Central New York region and the millions of passengers who travel through the Airport every year. To generate revenue, the Authority sells advertising space within the Airport terminal (the "Terminal") to a wide variety of commercial establishments, including several local law firms. The Firm expressed an interest in advertising within the Terminal. Unlike other permitted advertisements, however, the Firm's proposed advertisement contained a tag line that went well beyond describing the services the Firm offered: "When HR called it harmless flirting . . . we called it EXHIBIT A." Fearing that this sort of advertising copy could undermine the Authority's advertising program by negatively impacting the Airport's reputation or the goodwill of the Airport's passengers and tenants, the Authority offered to display the Firm's advertisement with any number of alternative tag lines, and even suggested several versions, that conveyed a similar message in a more professional and less misleading and disparaging manner. Rather than work with the Authority, however, the Firm filed this lawsuit.

The crux of the Firm's Complaint is the alleged restriction of its First Amendment right to free speech (Claim 1).[1] For reasons explained in Defendants' response to Plaintiff's Motion for Preliminary Injunction, Plaintiff should not prevail on its First Amendment claim. *See* ECF 20.

---

[1] For ease of reference, this Memorandum of Law will refer to the Claims for Relief in the Complaint as "Claim" followed by the number (e.g., "Claim 1").

1

Plaintiff's remaining substantive claims (Claims 2–7) are fatally flawed and should be dismissed. The claims alleging constitutional violations (Claims 2–5, as well as the derivative *Monell* claim in Claim 6) suffer from a fundamental defect: Each claim seeks relief under 42 U.S.C. § 1983 ("Section 1983") for alleged constitutional violations that are nothing more than disguised First Amendment claims for alleged deprivation of Plaintiff's free speech rights based on viewpoint. Where one provision of the Constitution provides an explicit basis for a claim, a plaintiff may not bring constitutional claims on inapposite theories of generalized constitutional harm. Plaintiff's equal protection and gender discrimination claims (Claims 4 and 5) fail for the added reason that the Firm has not plausibly pleaded that it has been treated differently, much less intentionally, because of any protected characteristic. The Firm further fails to state a basis for relief for breach of contract (Claim 7) because it identifies no contractual breach by the Authority in exercising its right under the advertising contract to review and approve Plaintiff's proposed advertisement.

In addition to the inadequacy of the substantive claims, Plaintiff fails to state a claim to several forms of relief. Plaintiff fails to state a claim for money damages for any alleged Section 1983 violations, whether featured as a *Monell* claim in Claim 6, or as applied to the constitutional violations alleged in Claims 1–5. Under *Monell*, money damages are available to a Section 1983 plaintiff only where that plaintiff identifies a specific "policy" or "custom" countenancing constitutional violations. Beyond conclusory labels, Plaintiff does not plausibly allege any such policy or custom, for the simple reason that no such policy or custom exists. Further, Plaintiff's request for punitive damages must be dismissed because such relief is not available either against a State-created public benefit corporation like SRAA or against individual defendants in official capacity suits, as Plaintiff has expressly styled the Complaint.

2

Finally, even assuming Plaintiff has plausibly pleaded a facial challenge to SRAA's 2023 advertising policy ("2023 Advertising Policy"), which it has not, the Court should dismiss any claim for injunctive relief on that basis under Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction. Specifically, a request for injunctive relief based on the 2023 Advertising Policy is rendered moot by the Authority's recent adoption of a revised advertising policy ("2025 Advertising Policy").

For these reasons, this Court should grant the Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND

While the Authority and the Firm dispute significant aspects of the key factual allegations of the Complaint, the vast majority of this Motion to Dismiss is necessarily limited to the well-pleaded facts of the Complaint and matters of judicial notice, and Defendants need not repeat the Complaint's allegations here.

Plaintiff conveniently omits several key documents from its Complaint, however, and those documents should be properly viewed as part of the Complaint. Evidence may be considered part of a complaint when it is: (1) attached to the Complaint; (2) incorporated by reference; or (3) the Court deems the evidence integral to at least one claim in the pleading. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam); *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 11 Civ. 0505, 2011 U.S. Dist. LEXIS 69168, at *8–9 (S.D.N.Y. June 27, 2011). Evidence is "integral" to the pleading when plaintiff has actual notice of the evidence and the complaint "relies heavily upon its terms and effect" in "framing" the pleading. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (first quoting *Int'l Audiotext Network Inc.*, 62 F.3d at 72; and then quoting *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

3

Two documents meet this standard. First, while the Complaint talks generally of the Authority's decision to reject the Firm's proposed advertisement, Plaintiff omits the letter from the Authority to the Firm that actually noted the Authority's decision not to proceed with the advertisement. *See* Hazelton Decl. Ex. 1. That August 14, 2025 letter from Jason Terreri must be included in the record before the Court can rule on this motion to dismiss. Absent the letter, there is no action for Plaintiff to challenge, so it is integral to the Complaint and to Plaintiff's claims. As the Complaint recognizes, the Authority had requested until the week of August 11 to make a determination on the advertisement, ECF 1 ¶ 37, yet Plaintiff omits the ultimate decision of the Authority, which was sent the day before Plaintiff filed suit. There is little question that Plaintiff "possessed" and "knew about and relied upon" the August 14 letter "in bringing the suit." *Bank of N.Y. Mellon Trust Co.*, 2011 U.S. Dist. LEXIS 69168, at *8. Indeed, Plaintiff seems to recognize as much in its Motion for Preliminary Injunction, to which Plaintiff appended the August 14 letter as an exhibit. *See* ECF 8-8. Because a plaintiff cannot "evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach [a document] to the complaint or to incorporate it by reference," the Court should consider the August 14 letter as part of the Complaint. *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).

Second, despite Plaintiff's assertions to the contrary, *see, e.g.*, ECF 1 ¶ 39, SRAA *did* in fact have an advertising policy that was publicly available at the time that the Firm's proposed advertisement was rejected. *See* Hazelton Decl. Ex. 2. The 2023 Advertising Policy is not included in the Complaint, but it is the basis for the Authority's August 14 letter rejecting the proposed advertisement, *see* Hazelton Decl. Ex. 1, and for the provisions Plaintiff cites from the advertising contract, *see* ECF 1 ¶ 33 (pp. 11–12). Even Plaintiff now appears to concede that SRAA had an

4

advertising policy and that it was publicly available. *See* ECF 24, at 4, 11–12. Accordingly, the Court should consider the 2023 Advertising Policy part of the Complaint.

With respect to solely the Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the Court may consider several additional pieces of evidence beyond the Complaint, appended documents, and the documents noted above. *See infra*, at 6 (describing authority to consider additional evidence on a Rule 12(b)(1) motion). First, in September 2025, the Authority adopted a revised advertising policy that more clearly describes prohibited advertising content, in addition to other nonmaterial updates to the 2023 Advertising Policy. *See* Hazelton Decl. Ex. 3. Second, based on the 2025 Advertising Policy, the Authority concluded that the Firm's proposed advertisement remained unacceptable, as explained in a letter sent on September 16, 2025. *See* Hazelton Decl. Ex. 4.

### STANDARD OF REVIEW

On a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), a district court must accept as true all well-pleaded facts and draw all reasonable inferences in the favor of the pleader. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although factual allegations in the complaint are assumed true, this rule does not extend to legal conclusions. *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

As for challenges to the Court's subject-matter jurisdiction, "Rule 12(b)(1) is the proper vehicle to raise justiciability," including mootness. *N.Y. State Rifle & Pistol Ass'n, Inc. v. James*, 1:22-CV-907, 2025 U.S. Dist. LEXIS 28731, at *6 (N.D.N.Y. Feb. 18, 2025). In evaluating a Rule 12(b)(1) motion to dismiss, "a court cannot ignore subsequent developments that bear upon its jurisdiction to hear a plaintiff's claims." *Valencia Ag, LLC v. Reid*, 5:24-CV-0116, 2025 U.S. Dist. LEXIS 54706, at *24 (N.D.N.Y. Mar. 25, 2025) (citing *Gallagher v. N.Y. State Bd. of Elections*, 496 F. Supp. 3d 842, 849 (S.D.N.Y. 2020)). As such, the court "can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002).

**ARGUMENT**

At its core, this case is about whether the Authority violated Plaintiff's First Amendment free speech rights when rejecting Plaintiff's proposed advertisement as inconsistent with the Authority's 2023 Advertising Policy. Plaintiff's Complaint, however, attempts to bootstrap several additional constitutional claims that boil down to little more than the core First Amendment claim and fails to state a claim on any other viable grounds. In addition, Plaintiff fails to state a claim for money damages under Section 1983 or for punitive damages. Finally, to the extent Plaintiff makes a facial First Amendment challenge to the Authority's 2023 Advertising Policy, that challenge should be dismissed as moot in light of the Authority's newly adopted 2025 Advertising Policy.

**I.      Plaintiff Fails to State a Claim for First Amendment Retaliation.**

"A plaintiff asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action

against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotation marks omitted).

Here, in Claim 2, Plaintiff attempts to piggyback a First Amendment retaliation claim when, in reality, Plaintiff has only a garden-variety First Amendment free speech claim, as pleaded in Claim 1. Even if Plaintiff were to have plausibly alleged an interest protected by the First Amendment and the exercise of its right, denial of that right is precisely the basis for Plaintiff's free speech claim. Plaintiff has not pleaded that SRAA took any further action against Plaintiff besides denying the advertisement at issue, the very action the Firm contends violates its free speech rights. Parsing the submission of the advertisement for approval as its own distinct First Amendment activity from the approval itself, as Plaintiff does, does not withstand scrutiny.

The essence of a retaliation claim is that the adverse action occurs *after* plaintiff engages in the expressed speech, not before. *See Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) ("[T]he First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' *after the fact for having engaged in protected speech*." (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019))). Thus, "a plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive.'" *Wilson*, 595 U.S. at 477 (quoting *Nieves*, 587 U.S. at 399). There can be no First Amendment retaliation claim where there is no opportunity to engage in protected speech, as the retaliation necessarily follows the speech.

Put differently, if Plaintiff satisfies the first element of retaliation—i.e., that its proposed advertisement "was protected by the First Amendment," *Matthews*, 779 F.3d at 172—then the Authority's denial of the advertisement would, standing alone, be a First Amendment free speech

7

violation. It would not be a distinct "adverse action" that was "causal[ly] connect[ed]" to the protected speech, *id.*, and therefore would fail to establish the other two elements of a retaliation claim. Holding otherwise would allow a plaintiff to convert any alleged violation of First Amendment free speech rights into a parallel First Amendment retaliation claim based on the exact same conduct. The Court should dismiss Claim 2.

> **II.    Plaintiff Fails to State a Claim for Gender Discrimination in Violation of the First and Fourteenth Amendments or a Claim for an Equal Protection Violation Under the Fourteenth Amendment.**

Plaintiff brings an ambiguous cause of action for "gender discrimination" in violation of the First and Fourteenth Amendments (Claim 3) and a separate claim for violation of equal protection under the Fourteenth Amendment (Claim 4). Neither states a claim.

First, to the extent that Plaintiff alleges that the advertisement was denied for offering a gender-related viewpoint, that is wholly subsumed by Plaintiff's First Amendment claim. In Claim 3, Plaintiff alleges, *inter alia*, that it suffered "discrimination based on free expression," "discriminat[ion] against Plaintiff based on viewpoint," and deprivation "of its right to offer free expression on matters particularly impacting women under the First Amendment." ECF 1, ¶¶ 66, 68, 72. Those allegations are at their core about the content and viewpoint expressed in the advertisement, not the identity or gender of the speaker. Thus, they are restatements of alleged First Amendment violations based on viewpoint and are duplicative of Plaintiff's First Amendment claim for restriction of speech. "Courts in the Second Circuit have dismissed equal-protection claims that merely restate First Amendment retaliation claims." *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019) (dismissing an Equal Protection claim "based on . . . protected First Amendment activity" as duplicative, noting that "courts should not unnecessarily stretch sections of the Constitution to reach wrongs already covered by other sections"); *see also Salvana v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 621 F. Supp. 3d 287, 313 (N.D.N.Y.

2022) (same). Any disparate treatment on the basis of viewpoint is properly cognizable under the First Amendment, and the equal protection and gender discrimination claims should be dismissed to the extent the violation alleged is viewpoint discrimination.

To the extent Plaintiff alleges that the Firm was discriminated because of gender, whether styled as a gender discrimination claim or an equal protection claim, Plaintiff fails to plausibly plead any violation. A gender discrimination claim is co-extensive with an equal protection claim under the Fourteenth Amendment, so the gender discrimination claim in Claim 3 is simply a particular variant of an equal protection claim in Claim 4. *See, e.g.*, *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("We have held that sex-based discrimination may be actionable under § 1983 as a violation of equal protection.").

Plaintiff, a law firm, has no gender and therefore cannot claim discrimination on the basis of gender. But even if Plaintiff's theory is instead that SRAA discriminated against the owner of the Firm—an allegation made nowhere in the Complaint—Plaintiff has failed to plausibly plead such a claim. It is telling that while Plaintiff does bring a claim for gender discrimination, Plaintiff does not allege in its complaint that the advertisement was denied *because of* the gender of the Firm's owner. Indeed, Plaintiff cannot make such an assertion, because there is no plausible basis to reach that speculative, unjustified conclusion.

Plaintiff faces an additional barrier to bringing an equal protection claim: Such a claim requires proof of *intentional* discrimination. *See, e.g.*, *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) ("To state a claim for an equal protection violation, appellants must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender."). Because Plaintiff does not plausibly plead that the Firm or its owner was treated differently on the basis of gender, they have necessarily not pleaded that such alleged

9

discrimination was intentional. As such, any gender discrimination claim, whether styled as such or as an equal protection claim, should be dismissed.

Because no version of Plaintiff's gender discrimination and equal protection causes of action plausibly state a claim, Claims 3 and 4 must be dismissed.

### III.    Plaintiff Fails to State a Claim for Violation of Substantive Due Process Under the Fifth and Fourteenth Amendments.

Plaintiff does not, and cannot, state a claim for violation of its substantive due process rights (Claim 5) because the alleged conduct at issue is covered by other constitutional provisions. The Supreme Court has "narrowed the scope of substantive Due Process to claims that are not covered by other provisions of the Constitution." *Hu v. City of New York*, 927 F.3d 81, 103 (2d Cir. 2019) (citations omitted). Thus, "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Id.* at 104 (quoting *Southerland v. City of New York*, 680 F.3d 127, 142–43 (2d Cir. 2012)) (cleaned up).

Here, Plaintiff finds explicit textual sources of constitutional protection for the conduct underlying its substantive due process claim in the First Amendment's free speech clause, as incorporated against the States through the Fourteenth Amendment. The substantive due process claim therefore "is either subsumed in [its] more particularized allegations"—here, Plaintiff's First Amendment speech claim—"or must fail." *Collins v. Putt*, 979 F.3d 128, 136 (2d Cir. 2020). The substantive due process claim therefore fails as a matter of law, regardless of whether Plaintiff's more specific claims can survive a motion to dismiss. *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 23-930, 2024 U.S. App. LEXIS 8832, at *4 (2d Cir. Apr. 12, 2024) (dismissing substantive due process claim regardless of whether other claims survive because "whether a plaintiff may

bring a substantive due process claim does not turn on the *success* of a claim alleging a violation of a more specific constitutional provision").

In any event, Plaintiff has not plausibly alleged a substantive due process claim. To state a claim for violation of substantive due process, a plaintiff must allege "(1) a valid liberty or property interest and (2) that defendants infringed on that interest in an arbitrary or irrational manner." *Id.* at \*2 (citation omitted). Moreover, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). On its face, SRAA's declining to approve a commercial advertiser's artwork for publication cannot fairly be said to shock the contemporary conscience. And again, to the extent Plaintiff contends that what shocks the conscience is the intent to violate its First Amendment or Equal Protection rights, such a claim is subsumed in the more specific constitutional claims. *20 Dogwood LLC*, 2024 U.S. App. LEXIS 8832, at \*2; *Velez*, 401 F.3d at 94 (dismissing substantive due process claim where "what would serve to raise defendant's actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, specific constitutional violations"). For these reasons, Claim 5 should be dismissed.

### IV.    Plaintiff Fails to State a Breach of Contract Claim.

Plaintiff has not plausibly pleaded a breach of contact cause of action (Claim 7) against SRAA either. Under New York law, the elements of a breach of contract claim are "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

11

Plaintiff's Complaint and filings to-date demonstrate that SRAA's rejection of Plaintiff's proposed tag line was entirely in accordance with the express, agreed-upon terms of the parties' contract. Plaintiff states that "SRAA and Plaintiff entered into an Agreement," appended to the Complaint as Exhibit C, ECF 1-3 ("Agreement"), "which gives Defendant SRAA the right to 'approve artwork' for submitted advertisements at the Airport." ECF 1 ¶¶ 114, 116; *see also id.* ¶ 32 (p. 10). More specifically, the parties' July 15, 2025 advertising contract contains a provision on the cover page that "all artwork must be approved by the airport prior to final production" and further provides in Section 7 that "[a]ll advertisements, including the text, content and graphics, shall be approved by the SRAA prior to installation, placement, or erection of the advertisement in the Licensed Space. Advertisements shall not contain material which the SRAA deems inappropriate, immoral, offensive or objectionable. Political and religious messages are not allowed." ECF 1-3, at 1, 3. Of note, SRAA's publicly posted 2023 Advertising Policy contained the same language, in addition to SRAA's "right to deny signage for any reason." *See* Hazelton Decl. Ex. 2.

The parties agree Plaintiff's desired advertisement has not been displayed at the Airport, and Plaintiff therefore has not paid any of the required contractual fees otherwise due. ECF 1-3, at 3, § 4. However, no breach lies, and Defendant SRAA cannot be found to have failed to perform, from the exercise of SRAA's express contractual right to withhold approval. *See Goureau v Lemonis*, 1:20-cv-04691, 2021 U.S. Dist. LEXIS 199321, at *19 (S.D.N.Y Oct. 15, 2021) ("[S]tate courts applying New York law have also refused to recognize a claim for breach . . . where the contract entitles one party to exercise complete and sole discretion with respect to the complained of actions."); *Winchester 84, LLC v. Morrow Equip. Co.*, No. 23-cv-5871, 2024 U.S. Dist. LEXIS 108555, at *5–6 (S.D.N.Y. June 18, 2024) (collecting cases supporting proposition that "[i]f the

12

express terms of a contract provide for unrestricted discretion, then an implied limit on that discretion would be inconsistent with the express terms of the contract").

### V.    Plaintiff Fails to State a Claim for Money Damages Under Section 1983 or for Punitive Damages.

Plaintiff also fails to state a claim to specific forms of relief requested in its Complaint. Specifically, even if Plaintiff sufficiently pleaded a claim for any constitutional violation under Section 1983, the Firm is not entitled to any money damages because it cannot plausibly plead that any "policy" or "custom" caused the alleged violations. In addition, neither the Authority nor its two officials, who have been sued solely in their official capacity, can be held liable for punitive damages.

### A.    Plaintiff Fails to State a Claim for Damages Against the Defendants Under *Monell*.

Plaintiff's Claim 6 seeks money damages under Section 1983 for alleged violations of various constitutional amendments. To the extent the underlying violations are not cognizable because the claims should be dismissed, *see supra* Sections I–IV, it is clear no damages are available. But even if Plaintiff were able to state a claim and ultimately prove any constitutional violation, *Monell* precludes money damages against SRAA or the individual defendants acting in their official capacities.

SRAA is a New York public benefit corporation consisting of eleven members. *See* N.Y. Pub. Auth. Law § 2799-ddd(1). As a New York State public benefit corporation, SRAA falls within the scope of entities against which Section 1983 claims can be brought, although only in specific circumstances, as set out in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See, e.g.*, *Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 142–43 (2d Cir. 1999) (applying *Monell* to claims against a public benefit corporation). The same *Monell* standard applies to officers sued in their official capacities, because an official capacity suit against a government official "is, in all

13

respects other than name, to be treated as a suit against the [government] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

To state a *Monell* claim against SRAA or its officers acting in their official capacities, Plaintiff cannot merely allege that one of the Authority's employees committed a wrongful act— that is, a theory of *respondeat superior*. Rather, Plaintiff must allege "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).

Here, damages are unavailable against any of the Defendants because Plaintiff has identified no policy or custom of violating Plaintiff's constitutional rights. "[M]ere conclusory statements"—for example, "such wrongful acts were part of the policy or custom of SRAA," ECF 1 ¶ 71)—are insufficient under Rule 12(b)(6) pleading standards. *Roe*, 91 F.4th at 651 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff does not identify any policy that endorses violations of the First Amendment. Indeed, Plaintiff at times alleges that the Authority does not even have a policy. *See* ECF 1 ¶ 39 ("At the time of the Firm's submission of the Ad, SRAA had no public written policy governing its advertising program.").[2] In addition, Plaintiff does not identify even a single other advertisement that she believes illustrates a custom of denying advertisers their First Amendment rights. This Court should therefore dismiss Claim 6, as well as any request for Section 1983 damages for the violations alleged in Counts 1–5.

> ### B. Plaintiff Fails to State a Claim for Punitive Damages Against the Individual Defendants in Their Official Capacity.

Plaintiff also seeks punitive damages against the individual defendants who are sued in their official capacity. That is prohibited under longstanding precedent.

---

[2] Defendant subsequently appears to have acknowledged that this assertion is inaccurate. *See* ECF 24, at 4, 11–12.

Here, it is unambiguous that Plaintiff has sued the Individual Defendants—Jason Terreri and Jason Mehl—in their official capacity. *See* ECF 1, at 1 (caption stating "JASON MEHL, in his official capacity as Chief Commercial Officer of the Syracuse Regional Airport Authority; JASON TERRARI [sic], in his official capacity as Executive Director of the Syracuse Regional Airport Authority"). There is little ambiguity on the face of the Complaint—in the caption of the case, no less. Plaintiff's decision on whom to sue and in what capacity must be honored.

Neither government entities nor officials sued in their official capacity can be held liable for punitive damages. *Roberts v. Fleury*, 6:22-CV-0918, 2024 U.S. Dist. LEXIS 50956, at *16 n. 7 (N.D.N.Y. Mar. 22, 2024) ("Public policy prohibits an award of punitive damages against municipalities and municipal employees sued in their official capacities because, among other reasons, such an award 'punishes only the taxpayers.'" (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267-71 (1981))); *see Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997) (holding that because plaintiff "has sued [the] officers in their official capacity only, . . . they enjoy the same immunity from punitive damages as" the government entity (emphasis omitted)). As such, this Court should dismiss the punitive damages claims against the Defendants.[3]

### VI.    The Court Lacks Jurisdiction to Grant Plaintiff Injunctive Relief With Respect to the 2023 Advertising Policy Because That Request Is Moot.

A plaintiff bears the burden to establish standing for each claim and for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). While "standing doctrine evaluates a litigant's personal stake as of the outset of litigation,"

---

[3] While in some instances it is ambiguous whether an official is sued in their official or personal capacity, there is no such doubt in this case. To the extent that the Individual Defendants are being sued in their personal capacity, however, they reserve the right to contest the legal sufficiency of any such pleadings and reserve the right to assert defenses including qualified immunity.

mootness doctrine "determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation." *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 221 (2d Cir. 2018) (citations omitted) (cleaned up).

Plaintiff fails even to acknowledge the Authority's 2023 Advertising Policy in its Complaint. *See* ECF 1 ¶ 39 ("At the time of the Firm's submission of the Ad, SRAA had no public written policy governing its advertising program."). Nevertheless, in its Motion for Preliminary Injunction, Plaintiff makes a weak suggestion that its First Amendment claim is based in part on an alleged facial defect in the Authority's 2023 Advertising Policy. *See* ECF 8-14, at 14 (claiming, with scant supporting argument, that the 2023 Advertising Policy's general prohibition of "inappropriate, immoral, offensive or objectionable" advertising content violates the First Amendment on its face). Plaintiff's failure to recognize that the 2023 Advertising Policy exists is reason enough to dismiss any facial challenge to that policy.

Even more, any facial challenge to the 2023 Advertising Policy suffers another fundamental defect: Even if Plaintiff has plausibly pleaded a facial challenge to the 2023 Advertising Policy, that challenge has been subsequently rendered moot by the Authority's adoption of a revised advertising policy in September 2025. The revised 2025 Advertising Policy provides the Authority's advertising partners with greater clarity, and the Authority's decisionmakers with additional guidance, as to the nature of permissible advertising content. The 2025 Advertising Policy no longer generally prohibits "inappropriate, immoral, offensive or objectionable" content, Hazelton Decl. Ex. 2 at 3, but rather identifies specific, objective categories of prohibited content, including:

> Advertising that disparages, demeans, ridicules, is abusive or hostile to, or reflects negatively on the character, integrity, or standing (or could reasonably be interpreted as such) of any individual, group, entity, business/profession, religion, organization,

16

or governmental entity, including advertising that portrays such individuals, entities, or groups as inferior, evil, unlawful, objectionable, or contemptible; [and]

Advertising that is false, misleading, or deceptive.

Hazelton Decl. Ex. 3 at 5. After adopting the 2025 Advertising Policy, the Authority advised the Firm that the proposed advertising copy remains unacceptable under these provisions. Hazelton Decl. Ex. 4.

To be clear, the Authority's rejection of the Firm's proposed advertising has always been based on the disparaging nature of its tag line, as described above. But to the extent the Firm argues otherwise, that argument is necessarily based on a policy, and a decision made thereunder, that is no longer controlling. *See Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 109 F. Supp. 3d 626, 633 (S.D.N.Y. 2015) (vacating an earlier preliminary injunction as moot where the defendant modified its advertising policy and rejected an advertisement on grounds other than those found unconstitutional), *aff'd*, 815 F.3d 105 (2d Cir. 2016). The 2025 Advertising Policy "sufficiently alters" the circumstances of this case, such that the issuance of a mandatory injunction based on the Firm's likelihood of success on its *facial* challenge to the 2023 Policy is now moot. *Id.* The Court should therefore dismiss any facial challenge to the 2023 Policy as moot under Rule 12(b)(1) or, in the alternative, for failure to state a claim under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants Syracuse Regional Airport Authority, Jason Mehl, and Jason Terreri respectfully request that the Court grant the relief requested herein, together with such other and further relief that the Court deems just and proper.

17

Dated: October 2, 2025                          Respectfully submitted,

                                                *s/Lindsey Helmer Hazelton*

Steven L. Osit                                  Lindsey Helmer Hazelton (509365)
sosit@kaplankirsch.com                          lhazelton@hancocklaw.com
Subash S. Iyer                                  John T. McCann (102148)
siyer@kaplankirsch.com                          jmccann@hancocklaw.com
KAPLAN KIRSCH LLP                               HANCOCK ESTABROOK, LLP
1500 Broadway, Suite 1605                       1800 AXA Tower I
New York, NY 10036                              100 Madison Street
                                                Syracuse, NY 13202

cc: All counsel of record via CM/ECF

18