IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGAN THOMAS LAW, PLLC,<br><br>             Plaintiff,<br><br>    v.<br><br>SYRACUSE REGIONAL AIRPORT AUTHORITY, JASON MEHL, in his official capacity as Chief Commercial Officer of the Syracuse Regional Airport Authority, and JASON TERRERI, in his official capacity as Executive Director of the Syracuse Regional Airport Authority,<br><br>             Defendants. | Civil Action No.:<br>5:25-cv-1114 (AJB/ML) |

**DEFENDANTS' BRIEF ON PRELIMINARY INJUNCTION REMEDY AND FURTHER PROCEEDINGS**

        **HANCOCK ESTABROOK, LLP**
        John T. McCann, Esq. (Bar Roll #102148)
        Lindsey H. Hazelton, Esq. (Bar Roll #509365)
        1800 AXA Tower I, 100 Madison Street
        Syracuse, New York 13202
        Telephone: 315-565-4500
        lhazelton@hancocklaw.com

        Steven L. Osit
        Subash S. Iyer
        KAPLAN KIRSCH LLP
        1500 Broadway, Suite 1605
        New York, NY 10036

        *Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.    Any Preliminary Injunction Remedy Should Apply Only to This Plaintiff and Only to the Proposed Advertisement. ................................................................................... 2

    II.    Any Preliminary Injunction Remedy Should Not Invalidate the Non-Disparagement Clause in the Authority's 2025 Policy. ............................................................................ 4

    III.    Defendants Propose Mandatory Mediation and Discovery in Accordance with the Forthcoming Case Management Plan Before Dispositive Motions and Potential Trial. .. 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126 (9th Cir. 2018) .................................. 8

*Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356 (D.C. Cir. 2018), *cert. denied*, 587 U.S. 1039 (2019) ................................................................. 7, 8

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ....................... 2, 3, 5

*Hartford-Empire Co. v. United States*, 323 U.S. 386 (1945) ......................................................... 5

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee* (*ISKCON*), 505 U.S. 672 (1992) ................... 6

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24 (2d Cir. 1978) ................... 5

*Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) ............................................................................ 5

*Lehman v. Shaker Heights*, 418 U.S. 298 (1974) .......................................................................... 6

*Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994) ................................................................. 5

*Matal v. Tam*, 582 U.S. 218 (2017) ........................................................................................... 7, 8

*Moms for Liberty – Brevard Cnty., FL v. Brevard Pub. Schs.*, 582 F. Supp. 3d 1214 (M.D. Fla. 2022), aff'd, 2022 WL 17091924 (11th Cir. Nov. 21, 2022) .......................... 7, 8

*Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41 (2d Cir. 1996) ...................................................... 2

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ........................................................................... 5

**Rules**

Fed. R. Civ. P. 16 ........................................................................................................................... 9

Fed. R. Civ. P. 26(a)(1) ................................................................................................................. 9

## PRELIMINARY STATEMENT

Defendant Syracuse Regional Airport Authority ("SRAA"), along with Defendants Jason Mehl and Jason Terreri, in their official capacities (collectively, the "Authority"), submit this Brief on Preliminary Injunction Remedy and Further Proceedings in accordance with this Court's January 15, 2026 Decision & Order ("PI Decision") (Dkt. No. 32) and in response to Plaintiff's January 23, 2026 brief ("Pl. PI Remedy Br.") (Dkt. No. 34).

Accepting the Court's preliminary injunction ruling for purposes of this briefing, Defendants respectfully request that any remedy this Court orders at this preliminary stage should be limited to the relief the Plaintiff requested in its Complaint and Motion for Preliminary Injunction. Specifically, any preliminary relief should apply to this Plaintiff and to the advertisement Plaintiff originally proposed. In addition, Defendants request that any remedy simply prohibit the Authority from rejecting the advertisement in question based on its current advertising policy (the "2025 Policy"), rather than mandating a specific manner in which the Authority must post Plaintiff's advertisement. Accordingly, Defendants believe that the Court's Order should be limited to prohibiting Defendants' from rejecting Plaintiff's proposed advertisement based on the non-disparagement and falsity provisions of the 2025 Policy.

Defendants have substantial concerns about any preliminary injunction remedy that extends beyond this Plaintiff. In particular, facially invalidating the non-disparagement provision in the 2025 Policy at this early stage in the litigation goes well beyond the relief Plaintiff sought in its Complaint and would create a substantial disruption to the Authority's objectives. In the event the Court were to take such an extraordinary step, the Authority would need additional time (at least 60 days) to consider its options and develop and adopt a new advertising policy that would avoid the risk of forcing it to run all advertising content, no matter how disparaging, in an airport setting where the Authority's principal goal is to provide an efficient, safe, and pleasant travel

experience, and where the Authority has long taken steps to limit the purposes of the applicable forum to commercial advertising that supports those goals.

As for further proceedings, the parties should proceed to discovery, addressing any objections at the appropriate stage, in accordance with the Case Management Plan the parties will submit on February 11, 2026, and any direction the Magistrate Judge provides at the Case Management Conference on February 18, 2026. Eventually, the Court can resolve the claims in this case, in some combination of dispositive motions and, as needed, trial. Defendants are also open to seeking an early resolution of this case.

## ARGUMENT

### I. Any Preliminary Injunction Remedy Should Apply Only to This Plaintiff and Only to the Proposed Advertisement.

While the Authority has real concerns about the Court's PI Decision and its implications for the Airport's advertising space as a nonpublic forum, *see infra* Section II, the appropriate way to address those concerns is as the lawsuit progresses before this Court and potentially on appeal. At this stage, the Authority acknowledges the Court's preliminary conclusion that the non-disparagement and falsity provisions of the Authority's 2025 Policy cannot serve as the basis to reject the advertisement Plaintiff sought to display in its Complaint. As such, Defendants respectfully suggest that a proper preliminary remedy would apply only to this Plaintiff and prohibit the Authority from enforcing the falsity and non-disparagement provisions of the Authority's 2025 Policy as to Plaintiff's proposed advertisement.

Second Circuit precedent requires injunctive relief to "be 'narrowly tailored to fit specific legal violations.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 50 (2d Cir. 1996)). This means that, in

equity, "a court is only empowered to grant relief no broader than necessary to cure the effects of the harm caused by the violation." *Id.* (citation omitted).

Plaintiff itself acknowledges that targeting relief to this Plaintiff alone addresses the harm Plaintiff has alleged. At the outset of this case, Plaintiff sought to "install and run" its proposed advertisement in accordance with the terms of its Advertising Agreement ("Agreement") with the Authority.[1] *See* Compl. at 34, Dkt. No. 1 (prayer for relief requesting "Order of preliminary injunctive relief, requiring Defendant SRAA to install and run Plaintiff's Ad on the terms offered in the Agreement and consistent with the terms offered to other advertisers at the Airport and preventing Defendant SRAA from removing Plaintiff's Ad for reasons outside the scope of the Agreement"). Plaintiff has not yet even amended its Complaint to challenge the Authority's 2025 Policy, *see generally id.*, though Defendants acknowledge that the Court has now evaluated the Authority's justifications for denying Plaintiff's proposed advertisement pursuant to that Policy. Even in its most recent brief on the preliminary injunction remedy, Plaintiff again focuses on its own relief and proposes a process for the Authority to run Plaintiff's advertisement. *See* Pl. PI Remedy Br. at 1–2, Dkt. No. ECF 34.

An injunction prohibiting Defendants from rejecting Plaintiff's proposed advertisement based on the non-disparagement and falsity provisions of the 2025 Policy would adequately address the harm Plaintiff alleges will occur during the pendency of the lawsuit. Plaintiff will be able to run the proposed advertisement—assuming Plaintiff complies with its contractual obligations related to the Authority's commercial advertising program—while the Court makes a final determination on the merits of Plaintiff's various claims.

---

[1] Plaintiff's preliminary injunction remedy brief references and includes a photo where it claims it originally contracted to run its advertisement. *See* Pl. PI Remedy Br. at 3–4, Dkt. No. 34. Defendants believe that the space displayed is not the space covered by the advertising agreement; the Authority has confirmed that the space for which Plaintiff originally contracted can be made available expeditiously.

3

As for the mechanics of implementation, Defendants do not believe this Court needs to order a specific process. Rather, in the event this Court enters the preliminary injunction prohibiting the Authority from rejecting Plaintiff's proposed advertisement based on the 2025 Policy, Defendants intend to provide Plaintiff with the advertising locations currently available and to enter into a new contract with Plaintiff to run the proposed advertisement for the duration of the preliminary injunction period, in line with Plaintiff's requested preliminary injunction remedy.

Defendants do not believe greater specificity than a prohibitory injunction is required at this stage because as this proceeding continues, there will be appropriate judicial oversight of Defendants' implementation of any injunction. To the extent Plaintiff has any concerns—which Defendants do not anticipate—Plaintiff can raise them with Defendants and, if needed, the Court, and Defendants will work in good faith to adhere to the Court's injunction.

## II. Any Preliminary Injunction Remedy Should Not Invalidate the Non-Disparagement Clause in the Authority's 2025 Policy.

The PI decision suggests, at times, that the Court may ultimately act more broadly, appearing to declare the non-disparagement provision in the 2025 Policy "facially invalid." PI Decision at 17, Dkt. No. 32. Such a broad invalidation of the Authority's 2025 Policy while in the current procedural posture would go far beyond what Plaintiff has ever requested, exceed the Court's authority, adjudicate a complex issue without the benefit of a full proceeding, and cause significant harm to the Authority's ability to manage its advertising space during the pendency of this case. The Court should not strike down or enjoin the 2025 Policy in any preliminary injunction.

To be clear, Plaintiff has never requested facial invalidation of the non-disparagement provision in the Authority's 2025 Policy, and that alone should foreclose such relief at this preliminary stage. As noted earlier, the Complaint sought simply to "install and run" Plaintiff's

4

proposed advertisement in accordance with the terms of its contract with the Authority. *See* Compl. at 34, Dkt. No. 1. In its opposition to Defendants' motion to dismiss, moreover, Plaintiff *disclaimed* a facial challenge to the Authority's 2023 Policy. *See, e.g.*, Pl. Opp. To Mot. To Dismiss at 5–6, Dkt. No. 28 ("[T]he 2023 Policy was not at issue in the initial Complaint," and "Plaintiff did not bring this case to address the 2023 Policy."). Indeed, Plaintiff has not even subsequently amended its Complaint to facially challenge the Authority's 2025 Policy, much less suggest an intention to challenge that Policy facially. *See generally* Compl., Dkt. No. 1. And even in its most recent brief on remedy, Plaintiff again focuses on its own relief, not on facial invalidation of its policy. *See* Pl. PI Remedy Br. at 1–2, Dkt. No. 34 (requesting relief only as to "Plaintiff").

Invalidating any portion of the Authority's 2025 Policy as a preliminary remedy, notwithstanding Plaintiff's far narrower requests for relief, would exceed the Court's authority. The Second Circuit has held that district courts are empowered "to grant relief no broader than necessary to cure the effects of the harm caused by the violation" and must "take care to ensure that injunctive relief is not overbroad." *Mickalis Pawn Shop*, 645 F.3d at 144. An injunction may not "enjoin 'all possible breaches of the law.'" *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 30 (2d Cir. 1978) (quoting *Hartford-Empire Co. v. United States*, 323 U.S. 386, 410 (1945)). Rather, "as a 'general rule, . . . injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Kane v. De Blasio*, 19 F.4th 152, 173 (2d Cir. 2021) (quoting *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994)). While courts can facially invalidate policies at times in the First Amendment context, facial remedies are still "generally disfavored," and a court can err if it enters a facial injunction when a narrower, as-applied injunction will suffice as a remedy. *Picard v. Magliano*, 42 F.4th 89, 101–02 (2d Cir. 2022). Accordingly, any preliminary injunction that might invalidate the Authority's non-

5

disparagement provision would exceed the Court's authority given the nature of the relief Plaintiff seeks.

Facially invalidating the Authority's non-disparagement provision would also force the Court to wade into a complex legal question that has divided other circuit courts without the benefit of a full proceeding. For decades, courts have permitted airport operators to close their advertising spaces to certain categories of speech because, as nonpublic forums, "the government need not permit all forms of speech on property that it owns and controls." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). Rather, because "the purpose of the terminals [is considered] to be the facilitation of passenger air travel, not the promotion of expression," the Supreme Court has granted airports greater leeway in closing off their forum compared to more traditional forums. *Id.* at 682. In addition, certain features of airports—including their security needs, limited access, and uniquely focused purpose—make them distinct, even from other "transportation nodes." *Id.* at 681–82.

Of particular import here, "[a]s commercial enterprises, airports must provide services *attractive to the marketplace*." *Id.* at 682 (emphasis added). As the Supreme Court plurality in *Lehman v. Shaker Heights* recognized in the context of transit advertising space—and as applies with equal, if not greater force, at airports—a transportation venue's advertising spaces are part of a "commercial venture" to "provide rapid, convenient, *pleasant*, and inexpensive service to" travelers. 418 U.S. 298, 301–03 (1974) (plurality opinion) (emphasis added). In *Lehman*, the court concluded that a prohibition on political advertising furthered "reasonable legislative objectives advanced by the city in a proprietary capacity"—including "minimiz[ing] . . . the risk of imposing upon a captive audience." *Id.* at 303–04.

6

At their core, these decisions recognize that the millions of air travelers who pass through airports are of all ages, backgrounds, and perspectives. Once they enter the secured area in a terminal, they are a captive audience. As travelers first and foremost, their principal objective is to efficiently reach their gates, board their flights, arrive safely at their destination airport, offboard quickly, and continue on with their lives; as proprietor, the Airport's primary goal is to facilitate precisely that. Traveling through an airport is at times a stressful experience. Airports work hard to ensure that their patrons are comfortable and have a pleasant environment. These interests are not untoward; rather, they are the exact reason courts have long permitted greater limitations on free speech at airports, so long as airports do not open up their forums through policy or practice.

In the face of longstanding precedent, the Court's PI Decision relies heavily on *Matal v. Tam*, a 2017 Supreme Court decision that invalidated the Patent and Trademark Office's prohibition on registering trademarks that may "'disparage . . . or bring . . . into contemp[t] or disrepute'" any 'persons, living or dead.'" 582 U.S. 218, 223 (2017) (alterations in original) (quoting 15 U.S.C. § 1052(a)). *Matal* arose in a context far removed from the environment of a busy airport with its unique operational and proprietary requirements. Indeed, *Matal* did not even conduct a forum analysis, instead evaluating a trademark registration as possible "commercial speech," a distinct First Amendment category. *Id.* at 244–45 (plurality opinion); *id.* at 251 (Kennedy, J., concurring in part and in the judgment).

It is far from clear that *Matal* applies to the unique circumstances at an airport, and the Court has not even had the benefit of briefing on this question. At the time the Court issued its PI Decision, neither party had even cited *Matal* in its briefs. *See generally* Dkt. Nos. 1, 8, 20, 24, 25, 28, 31. As such, the Court did not—and still does not—have the benefit of the parties' substantive briefing on this critical issue. Moreover, the Second Circuit has not provided directly applicable

guidance, as it too has not considered *Matal*'s applicability to the unique operational and proprietary needs of airports or transit agencies. And outside of the Second Circuit, courts that have considered *Matal* in forums similar to airports are split. *Compare Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 364 (D.C. Cir. 2018), *cert. denied*, 587 U.S. 1039 (2019) (concluding that the parties' discussion of *Matal* is "irrelevant" in the "nonpublic forum" of a transit agency's advertising space); *Moms for Liberty v. Brevard Pub. Schs.*, 582 F. Supp. 3d 1214, 1219 n.8 (M.D. Fla. 2022), *aff'd*, No. 22-10297, 2022 WL 17091924 (11th Cir. 2022) (concluding "reliance on *Matal* is misplaced" in nonpublic forum), *with, e.g.*, *Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126, 1131 (9th Cir. 2018) (relying on *Matal* to invalidate an advertising prohibition). Taken together, these factors should counsel this Court's substantial hesitation in adopting an overly broad preliminary injunction remedy.

A broad injunction invalidating the Authority's non-disparagement provision would also have serious consequences on the Authority's continued ability to partially open its space as a nonpublic forum for commercial advertisement. As Defendants have noted in their briefing, the non-disparagement clause prevents not only messages that disparage human resources professionals who assess sexual harassment claims, but also messages disparaging those who allege such harassment. *See* Defs.' Mem. In Opp. To Prelim. Inj. Relief at 15–16, Dkt. No. 20. Without an anti-disparagement provision, there is no logical endpoint to what airport travelers would have to endure in terms of disparagement of various groups and individuals, perhaps short of defamatory, profane, or obscene speech.

Facially invalidating the disparagement clause could fundamentally change air travelers' experience at airports and therefore force the Authority into an incredibly challenging position: The Authority may have to choose between opening its forum to all commercial advertising

8

content, no matter how disparaging, or it would need to consider closing the forum more broadly in an attempt to avoid the proliferation of slogans that could adversely affect the traveling public's experience at the Airport and could create disruptions to the orderly flow of passengers.

In the event the Court considers adopting a broader remedy invalidating portions of the Authority's 2025 Policy, Defendants request at least 60 days to reconsider the Authority's advertising policy and adopt modifications or clarifications, so that it can weigh alternative approaches to close its advertising forum to a broader range of advertising.

### III. Defendants Propose Mandatory Mediation and Discovery in Accordance with the Forthcoming Case Management Plan Before Dispositive Motions and Potential Trial.

The Court also directed the parties to "state what further proceedings are anticipated regarding any remaining issues, whether by way of discovery, motion practice, or trial." PI Decision at 23, Dkt. No. 32. The parties must file a Civil Case Management Plan on or before February 11, 2026, and initial disclosures required pursuant to Fed. R. Civ. P. 26(a)(1) are to be exchanged by the parties that same day. Furthermore, a Fed. R. Civ. P. 16 Conference has been scheduled before Magistrate Judge Lovric on February 18, 2026.

In light of the upcoming scheduled milestones and proceedings, Defendants would respectfully suggest that the schedule for remaining proceedings be left for resolution through the standard processes under federal and local rules, with the engagement and direction of Magistrate Judge Lovric as may be needed. Such an approach may be particularly beneficial given the breadth of the discovery sought by Plaintiff in its preliminary injunction remedy brief, *see* Pl. PI Remedy Br. at 4–6, Dkt. No. 34, and Defendants' need for discovery on Plaintiff's various causes of action and damages claims. In addition, several of Plaintiff's discovery requests appear to contemplate disclosure of privileged materials, *see id.* (requesting communications involving and deposition of the Authority's General Counsel), which require the parties' further conferral and ultimately may

9

require court involvement. Following discovery, Defendants believe that further motion practice, including on the unavailability of punitive damages and attorney's fees and other issues, might be required, as may trial on any remaining disputed material factual issues.

Finally, Defendants note Plaintiff's suggestion that the parties engage in mediation. Defendants are open to seeking and would like to obtain an early resolution of this case, potentially with this Court's assistance in fostering settlement if the Court is so inclined.

## CONCLUSION

For the foregoing reasons, Defendants Syracuse Regional Airport Authority, Jason Mehl, and Jason Terreri respectfully request that the Court grant the relief requested herein.

Dated: February 6, 2026

Steven L. Osit
sosit@kaplankirsch.com
Subash S. Iyer
siyer@kaplankirsch.com
KAPLAN KIRSCH LLP
1500 Broadway, Suite 1605
New York, NY 10036

Respectfully submitted,

*s/Lindsey Helmer Hazelton*

Lindsey Helmer Hazelton (509365)
lhazelton@hancocklaw.com
John T. McCann (102148)
jmccann@hancocklaw.com
HANCOCK ESTABROOK, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

cc: All counsel of record via CM/ECF